**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**IN RE:**

**RICHARD D. CULLINAN**

        **Debtor.**

**CHAPTER 11 (Subchapter V)**

**CASE NO.  22-51326-wlh**

**PLAN OF REORGANIZATION**

**Dated this 12th day of May, 2022**

Filed by:

**RICHARD D. CULLINAN**

Attorney for Debtor
Will B. Geer
Geer Law Group, LLC
50 Hurt Plaza, SE, Suite 1150
Atlanta, Georgia 30303
wgeer@geerlawgroup.com
678-587-8740

1

COMES NOW RICHARD D. CULLINAN, Debtor and Debtor in possession in the above-captioned case ("Debtor"), and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtor.  Debtor is the proponent of this Plan as required under section 1191 of the Bankruptcy Code.

## Article 1
## Contents of the Plan; Required Disclosures

1.1    *Subchapter V Plan of Reorganization*. This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

1.2    *History of the Debtor's Business Operations*.

Debtor is an individual residing in the state of Georgia, county of Fulton. Debtor works in the banking industry and also is a member of multiple small businesses. In 2016, Mr. Cullinan and Brent Cann formed C2 Investment Partners, LLC ("C2") to operate multiple Newk's franchised restaurants. Mr. Cullinan and Mr. Cann each own 50% of C2, which in turn owns the following:

| Name | Percentage | Year | Location | Status |
|------|-----------|------|----------|--------|
| Midtown Acquisitions, LLC | 51% | 2017 | Peachtree St. (Atlanta) | Closed |
| LRA, LLC | 65% | 2017 | Lawrenceville, GA | Closed |
| GA Fast Casual II, LLC | 51% | 2018 | Howell Mill Road (Atlanta) | Closed |
| GA Fast Casual III, LLC | 55% | 2019 | Buford, GA | Operating |

In July of 2021, C2's membership interests in the following LLC's were foreclosed upon based upon its membership interests being pledged as collateral for a hard-money loan to other investors in the Newks' restaurants:

| Briarcliff Restaurant Acquisitions, LLC | 51% | 2016 | Briarcliff Road (Atlanta) | Operating |
|------|-----------|------|----------|--------|
| GA Fast Casual, LLC | 51% | 2017 | LaVista Road (Tucker, GA) | Operating |

Mr. Cullinan is also a member of the following businesses, though takes no operational role in such businesses, nor does he receive any distributions from the businesses. The businesses

operate and own FedEx routes. Brent Cann is the operator and pays himself a salary. Mr. Cullinan has received only one distribution from this business in the approximate amount of $14,000.00 in August of 2020:

| Name | Percentage | Year | Location | Status |
|------|-----------|------|----------|--------|
| Coastal Logistics Holdings, LLC | 28% | 2018 | Savannah, GA | Operating |
| Coastal Transport Holdings, Inc. | 28% | 2018 | Savannah, GA | Operating |
| Coastal Cargo Holdings, LLC | 28% | 2018 | Savannah, GA | Never Operated |
| Coastal Delivery Holdings, Inc. | 28% | 2019 | Savannah, GA | Fuel Account Only |

Debtor also has an ownership interest in the following businesses unrelated to the FedEx businesses or the Newk's eateries:

| Name | Percentage | Year | Location | Status |
|------|-----------|------|----------|--------|
| Lower Green Valley Investments, LLC | 50% | 2016 | Atlanta, GA | Active |
| Penn Forest Investments, LLC | 100% | 2017 | Atlanta, GA | Not Active |

Penn Forest Investments, LLC was formed in 2017 as an investment vehicle that was never operational. It was administratively dissolved by the Georgia Secretary of State in 2018. Lower Green Valley Investments, LLC ("**LGV**") is an entity owned 50% by Mr. Cullinan and 50% by his spouse. LGV owns 25% of AC Manager, LLC, which in turn owns 75% of Ageless Center Acquisition, LLC that operates a health spa.

A summary of Debtor's creditors is as follows, with Debtor reserving all rights to object to any claim listed in this summary:

| Creditor | POC | Status | Total Claim |
|----------|-----|--------|-------------|
| Atlantic Capital | 10 | Unsecured | $505,069.70 |
| Truist Bank | 9 | Secured/Unsecured | $230,000/$195,636.58 – based on proof of claim filed by Truist. |
| Truist Bank | 8 | Unsecured | $576,814.11 |
| Fifth Third | 7 | Secured/Unsecured | $1,033,706.34 – Total Claim to be bifurcated |

| | | | upon sale of Residence. |
|---|---|---|---|
| Coastal States Bank | 6 | Unsecured | $372,168.64 *Coastal States Bank asserts a secured claim. Debtor asserts claim is unsecured based on pre-petition cancellation of security deed. |
| Coastal States Bank | 5 | Secured | $41,721.66 |
| Fifth Third | 4 | Secured | $34,866.81 |
| Truist Bank | 3 | Unsecured | $1,146.21 |
| IRS | 2 | Priority/Unsecured | $100/$200 |
| Simply Bank | 1 | Unsecured | $378,648.05 |
| Apple Pie Capital | | Unsecured | $251,000.00 |
| Apple Pie Capital | | Unsecured | $1,110,000.00 |
| Columbia Properties | | Unsecured | $0.00 |
| Eastern Funding | | Unsecured | $328,000.00 |
| Kapitus | | Unsecured | $0.00 |
| Lendini | | Unsecured | $112,000.00 |
| Kabbage | | Unsecured | $101,000.00 |
| Liberatas Funding, LLC | | Unsecured | $323,900.00 |
| Merton Walk, LLC | | Unsecured | $0.00 |
| Paula Marchman | | Unsecured | $100,000.00 |
| PREF Metropolis, LLC | | Unsecured | $0.00 |
| SH Flemington, LLC | | Unsecured | $0.00 |
| Sunlife Assurance Co. | | Unsecured | $0.00 |
| Tucker Meridian, LLC | | Unsecured | $0.00 |
| Van Wagner Communications | | Unsecured | $14,000.00 |

Debtor currently works full-time for ConnectOne Bank with a salary of $157,500.00/year.

1.3   *Current Management and Employees*.

    1.3.1   Directors and Officers of Reorganized Debtor.

Debtor is an individual; therefore, he will continue to manage his own affairs.

    1.3.2   Insiders Employed by Reorganized Debtor.

4

Mr. Cullinan does not employ any insiders.

      1.4    *Liquidation Analysis.*

      Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in liquidation, the Subchapter V Trustee or chapter 7 trustee would incur costs associated with liquidation. Debtor's only significant asset is his principal residence located at 305 Cannady Court, Atlanta, GA 30350 (the "Residence"). Debtor estimates the value of the Residence at $797,000.00.  As of the filing of this Plan, the Debtor has a pending motion requesting court authority to sell his residence that he owns as a joint tenant in common with this spouse. After the sale of the Residence, Debtor will only receive his homestead exemption amount of $21,500.00, and Fifth Third Bank and his spouse will receive all remaining proceeds. There would be no recovery in a hypothetical Chapter 7 for Debtor's unsecured creditors from proceeds of Debtor's Residence.  The various entities listed in Section 1.2 hold little value as closed corporations. The "Newks" companies are all in significant debt that represents a large portion of Mr. Cullinan's unsecured creditor pool as a guarantor. The FedEx businesses are operated by Brent Cann with no involvement from the Debtor. Mr. Cullinan's last distribution was in August of 2020, and any future distributions from those businesses is unlikely due to the high expenses associated with any type of trucking company, as well as Mr. Cann's salary of over $180,000.00/year.

      LGV is a company owned jointly by Mr. Cullinan and his wife. Mr. Cullinan and his wife receive $3,750.00 each for their work of 10-15 hours per week as members of an entity that effectively owns 18.75% of the health spa business (9.375% for Mr. Cullinan). Because LGV is owned 50/50 with his wife, they must make decisions together, as would any potential purchaser. Moreover, any potential purchaser would have to work 10-15 hours per week and likely be approved by the other three entities that own the remaining 75% of AC Manager, LLC. If an "owner" is not actively involved in the business, they do not receive a distribution, and decisions are made by a majority vote of the four entities involved. In short, this is a small business in which any Chapter 7 Trustee would have significant trouble finding a third-party investor to sell to, as is the case for most small businesses in which only a small percentage of ownership is available with little control.

      At best, Debtor estimates that a third party would purchase his shares for $45,000.00, though that is considerable considering that any potential purchaser would share 50/50 ownership with his spouse with whom they would have to make decisions. Debtor's other assets, including financial accounts and household items, total approximately$25,935.80. This excludes amounts in Debtor's 529 accounts, as, upon information and belief, contributions were made more than two years pre-petition, which would exempt those accounts from the bankruptcy estate.

      Because the Debtor is proposing to pay $72,000.00 to his unsecured creditors over three years, creditors will receive more than they otherwise would in a hypothetical Chapter 7 without accounting for liquidation costs, trustee fees, and other administrative expenses of a Chapter 7 estate. The proposed Plan contemplates payments greater than any recovery under liquidation.

      1.5    *Alternative Confirmation Standards Under Section 1191(a) and (b).* Debtor seeks to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority

5

in number and two-thirds in amount of Allowed Claims actually voting. If Debtor succeeds in obtaining the consent of all Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtor is unable to obtain the consent of all Classes, Debtor will request the Court to confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

      1.6    *Property and Claims.*  This Plan deals with all property of Debtor and provides for treatment of all Claims against Debtor and its property.

## Article 2
## Definitions and General Provisions

      For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

      2.1    *Definitions.* The following terms, when used in this Plan, shall have the following meaning:

      2.1.1  "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

      2.1.2  "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtor or enforceable against the property of Debtor under sections 502 or 503 of the Bankruptcy Code.

      2.1.3  "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

      2.1.4  "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

      2.1.5  "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

      2.1.6  "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "*Ballot*" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "*Bankruptcy Case*" means the chapter 11 case initiated by Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.1.9 "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10 "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12 "*Business Day*" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.14 "*Causes of Action*" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.16 "*Claim*" means a claim against Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "*Classes*" means a category of Claims described in this Plan.

2.1.18 "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "*Confirmation Order*" means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtor.

2.1.21 "*Debtor*" shall mean RICHARD D. CULLINAN, the debtor in this Bankruptcy Case.

2.1.22 Intentionally Omitted.

2.1.23 "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.24 "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "*Distribution*" means any distribution by Debtor or reorganized Debtor to a Holder of an Allowed Claim.

2.1.26 "*District Court*" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.27 "*Effective Date*" means the date that is 60 days after entry of a Confirmation Order.

2.1.28 "*Estate*" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtor, both that Debtor acquires after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

2.1.29 "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.30 "*Filing Date*" means February 17, 2022.

8

2.1.31 "*Final Distribution*" means the Distribution by Debtor or reorganized Debtor that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.32 "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.33 "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.34 "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.35 "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.36 "*Initial Distribution Date*" means the Effective Date or whatever date the Plan provides for each Class, whichever is later.

2.1.37 "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.38 "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.39 "*Plan*" means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.40 "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.41 "*Priority Tax Claim*" means a Claim against Debtor that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.42 "*Professional Compensation*" *means* (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtor and the unsecured creditors' committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.43 "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed

Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.44  "*Record Holder*" means the Holder of a Claim as of the Record Date.

2.1.45  "*Released Parties*" means Debtor.

2.1.46  "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor' business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.47 "*Schedules*" means the Schedules of Assets and Liabilities Debtor filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.48 "*Secured Claim*" means a Claim against Debtor to the extent secured by a Lien on any property of Debtor on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.49 "*Subchapter V Trustee*" means Cameron McCord, or any successor to Cameron McCord, appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case.

2.1.50 "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.51 "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.52 "*Unsecured Claim*" means any Claim against Debtor that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2    *Time*.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

10

2.3     *Events of Default*.       Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Will B. Geer (Geer Law Group, LLC) at the address reflected in the then current directory of the State of Bar of Georgia.  In the event the Plan is confirmed under 1191(b), the Holder must also provide a copy of the Default Notice to the Subchapter V Trustee at the address reflected on the case docket. Debtor shall have fifteen (15) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default.  Receipt by Debtor's Attorney or the Subchapter V Trustee shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example a default under Class 1 shall not constitute a default under Class 2).  Upon failure to cure a default under this section, the creditor to whom Debtor has defaulted may pursue their claim as provided for in the Plan in either bankruptcy court and state court.

2.4     *Notices*.   All notices under the Plan shall be in writing.   Unless otherwise specifically provided herein, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail to Will B. Geer at the address reflected in the then current directory of the State Bar of Georgia.  In the event the Plan is confirmed under 1191(b), all notices under the Plan must also be provided to the Subchapter V Trustee at the address reflected on the case docket.  Receipt of notice by Will B. Geer (Geer Law Group, LLC) or the Subchapter V Trustee shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

**Article 3**
**Classification of Claims and Interests**

3.1    Summary.  The categories of Claims and Interests set forth below classify all Claims against Debtor for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2    Classes:

3.2.1   Class 1 shall be the secured claim of Coastal States Bank.
3.2.2   Class 2 shall be the secured claim of Coastal States Bank.
3.2.3   Class 3 shall be the secured claim of Truist Bank.
3.2.4   Class 4 shall be the secured claim of Fifth Third Bank.
3.2.5   Class 5 shall be the secured claim of Fifth Third Bank.
3.2.6   Class 6 shall be the General Unsecured Creditors.

**Article 4**
**Treatment of Claims and Interests**

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution or amount creditor would receive over the life of the Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1 Class 1: Secured Claim of Coastal States Bank.**

Class 1 shall consist of the Secured Claim of Coastal States Bank ("**CSB**").

Upon information and belief, CSB asserts a first priority lien upon Debtor's Residence, as defined above, pursuant to the Security Deed recorded in the records of the Superior Court of Fulton County, Georgia on May 9, 2017 in Deed Book 57896, commencing on Page 402 (the "**CSB 1st Security Deed**") from Debtor, as borrower, to CSB. The CSB proof of claim asserts the outstanding balance on the Class 1 claim is $372,168.64 (the "**Secured Class 1 Claim**").

Prior to the Petition Date, CSB filed a cancellation of the CSB 1st Security Deed. As a result, the Secured Class 1 Claim shall be treated in its entirety as an unsecured claim in Class 6 and shall be entitled to vote as a Class 6 creditor.

12

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

### 4.2 Class 2: Secured Claim of Coastal States Bank.

Class 2 shall consist of the Secured Claim of CSB regarding the second priority deed to secure debt on the Residence.

Upon information and belief, CSB asserts a second priority lien upon Debtor's Residence, as defined above, pursuant to the Security Deed recorded in the records of the Superior Court of Fulton County, Georgia on August 29, 2017 in Deed Book 578, commencing on Page 414 (the "CSB 2nd Security Deed") from Debtor, as borrower, to CSB. The CSB proof of claim asserts the outstanding balance on the Class 2 claim is $41,721.66.

At the time of the filing of this Plan, Debtor's Residence is subject to a pending motion requesting court authority to sell the Residence to a third party and pay the CSB 2nd Security Deed in full. If the Residence is not sold prior to confirmation, Debtor shall continue paying the Class 2 claim pursuant to the underlying loan documents.

The Residence serves as the Debtor's principal residence; therefore, the claim cannot be modified. As such, this class is not impaired and it not entitled to vote on the Plan. Debtor shall treat CSB's Class 2 claim pursuant to the underlying loan documents and security deed. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

### 4.3 Class 3: Secured Claim of Truist

Class 3 consists of the secured claim of Truist Bank ("Truist"). Upon information and belief, Truist asserts a first priority lien upon Debtor's Advantage Money Market Savings Account No. 3346 (the "Money Market Account") as a result of Debtor pledging the Money Market Account to secure his individual guaranty of a debt owed to Truist by Briarcliff Restaurant Acquisition, LLC ("Briarcliff"). Briarcliff owns and operates a Newk's restaurant franchise. Truist asserts that the balance owed on its claim is $425,636.58. Briarcliff has not defaulted on payments to Truist and continues to pay the regular monthly payment pursuant to the underlying loan documents. Upon information and belief, Debtor values the Money Market Account at $259,600.00 (such amount, plus interest accruing pursuant to the following paragraph, is referred to herein as the "Secured Class 3 Claim").

Briarcliff shall continue to pay the regularly scheduled payments pursuant to the underlying loan documents, which shall pay the Secured Class 3 Claim in full. The Secured Class 3 Claim shall accrue interest at a rate of 5.49% - the amount set by the underlying loan documents. Based on monthly payments of $8,791.25, Debtor shall pay the Secured Class 3 Claim in full in 32 payments from the Petition Date, with a final 32nd payment of $7,006.43.

Should Briarcliff default on its payments to Truist, the Debtor shall pay the remaining balance of the Secured Class 3 Claim at $3,000.00 per month that shall continue to accrue interest at 5.49% until the Secured Class 3 Claim is paid in full.

Any payments paid to Truist on its Secured Class 3 Claim after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to reduce the principal balance of the Secured Class 3 Claim. Truist shall retain its lien on the Money Market Account and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date. Once the value of the Secured Class 3 Claim has been paid to Truist ($259,600.00), Truist shall release its lien/possessory security interest in the Money Market Account to Debtor.  Any deficiency shall be treated in Class 6, with any payments made to Truist applied pursuant to the underlying loan documents.

The Claim of the Class 3 Lender is impaired by the Plan and the Holder of Class 3 Claims is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

### 4.4 Class 4: Secured Claim of Fifth Third Bank.

Class 4 consists of the secured claim of Fifth Third Bank ("**Fifth Third**"). Upon information and belief, Fifth Third asserts a judgment lien upon all Debtor's assets. Debtor has filed a motion to seek avoidance of Fifth Third's judgment lien to the extent it impairs Debtor's bankruptcy exemptions in his Residence and other personal property. Debtor has also filed a motion requesting court authority to sell his Residence. Fifth Third shall receive whatever proceeds from the sale of the Residence it is entitled to after avoidance of its judgment lien and other entitled parties are paid from the sale pursuant to separate court order. The remaining deficiency claim shall be treated in Class 6 as an unsecured claim.

The Claim of the Class 4 Lender is impaired by the Plan and the Holder of Class 4 Claims is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

### 4.5 Class 5: Secured Claim of Fifth Third Bank (Audi)

Class 5 consists of the secured claim of Fifth Third. Upon information and belief, Fifth Third asserts a first priority lien upon a 2017 Audi A8, VIN ending in 1259 (the "**Audi**") owned by Debtor and his spouse. Debtor asserts that the outstanding balance owed on the Audi on the Filing Date was approximately $34,866.81 (such amount, plus interest accruing pursuant to the following paragraph, is referred to herein as the "**Secured Class 5 Claim**"). Debtor values the Audi at $34,866.81.

Any payments paid to Fifth Third on its Secured Class 5 Claim after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied pursuant to the underlying loan documents. Debtor shall pay the Secured Class 5 Claim pursuant to the underlying loan documents. Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 5 Claim. Fifth

Third shall retain its lien on the Audi and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date.

The Claim of the Class 5 Lender is NOT impaired by the Plan and the Holder of Class 5 Claims is NOT entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

### 4.6 Class 6:   General Unsecured Claims:

Class 6 shall consist of General Unsecured Claims including any potential deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f).

*Confirmation under Section 1191(a)*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, Debtor shall pay the Class 6 unsecured creditors $2,000.00 per month for thirty-six (36) months, which shall be disbursed to each unsecured creditor on a *pro rata* basis. Payments shall begin on the 5th of the month following the Effective Date. Debtor shall be permitted to pre-pay any amounts due to unsecured creditors under this class with no pre-payment penalty. To the extent any co-obligor or any other entity makes payments to any Class 6 creditor that reduces its claim, the payment due under this section shall decrease by the corresponding amount.

*Confirmation under Section 1191(b)*

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Debtor shall pay the Class 6 unsecured creditors $2,000.00 per month for thirty-six (36) months, which shall be disbursed to each unsecured creditor on a *pro rata* basis. Payments shall begin on the 5th of the month following the Effective Date. Debtor shall be permitted to pre-pay any amounts due to unsecured creditors under this class with no pre-payment penalty.

Notwithstanding anything else in this document to the contrary, any claim listed above shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtor's obligations hereunder shall be reduced accordingly.

The Claims of the Class 6 Creditors are Impaired by the Plan and the holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 4.11    Sale Procedures

After the Confirmation Date, Debtor is authorized to sell or refinance all his assets, specific assets including his real property, free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures").   In the event the applicable assets are subject to secured claims,

Debtor is authorized to sell or refinance such property free and clear of liens, claims and encumbrances on the following terms:

(i)  If selling or refinancing the entire property, Debtor may sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property; and

(ii)  If selling or refinancing a portion of the property, such as a lot or portion of the acreage, Debtor may sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property.

Such amounts are referred to in the Plan as the "Release Amount." The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid as follows: (i) first to cover any *ad valorem* property taxes associated with the particular asset, (ii) then secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtor's other obligations as set forth in the Plan. In the unlikely event that any Allowed Secured Claim is not satisfied and paid in full pursuant to the provision of the Sale Procedures set forth in Article 4.11 of the Plan, such unpaid amount shall be provided for and paid as General Unsecured Claim in Class 6.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

**Article 5**
**Subchapter V Trustee**

*5.1    Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

*5.2    Confirmation under Section 1191(a) or (b)*

If this Plan is confirmed under section 1191(a) or 1191(b) of the Bankruptcy Code, the services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2). Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Unless otherwise agreed to by the Subchapter V Trustee, Debtor shall pay any unpaid allowed compensation owed to the Subchapter V Trustee on the later of (i) on the Effective Date and (ii) the day after the order on the Subchapter V Trustee's application for compensation becomes a Final Order.

16

**Article 6**
**Treatment of Unclassified Claims**

1.1    *Summary.*  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, other than that of the Subchapter V Trustee addressed above, are instead treated separately in accordance with Article 6 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

1.2    *Geer Law Group, LLC.* With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Geer Law Group, LLC ("Firm") to serve as bankruptcy counsel.  As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $15,000.00.  Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. The Firm shall retain its security interest in the pre-petition retainer. Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than possible professional fees.

1.3    *Administrative Expense Claims.*  Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, (iv) if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, pro-rata  over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

1.4    *Proof of Claim for an Administrative Expense Claim.* Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor and the Subchapter V Trustee.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

1.5    *Professional Fees.* Other than the Subchapter V Trustee and Debtor's counsel, any Person, seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

1.6    *Post-Confirmation Professional Fees.* Debtor may pay professional fees incurred after confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

1.7    ***Priority Claims:*** Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with § 1129(a)(9)(C) of the Code. The IRS has claimed a $100.00 priority claim, though the Debtor disputes the validity of the IRS' claim. If the IRS' claim is found to be valid, it will be paid in equal monthly installments upon terms consistent with § 1129(a)(9)(C).

**Article 7**
**Means for the Implementation of the Plan**

7.1    *Parties Responsible for Implementation of the Plan.*  Upon confirmation, Debtor will be charged with administration of the Case.  Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office or by the Subchapter V Trustee. Debtor will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

7.2    *Sources of Cash for Distribution.*

7.2.1    The source of funds for the payments pursuant to the Plan is Debtor's personal income for secured creditors and priority creditors. Debtor shall pay Class 6 from family member contributions.

7.2.2    A copy of Debtor's post Confirmation monthly projections is set forth on **Exhibit "A"** to this Plan.   Debtor's projections are based on Debtor's previous periods of revenue generation.  Debtor is able to reasonably project income and expenses based on such information.

7.2.3    Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business.  Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.2.4    *Preservation of Causes of Action.*  In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained Actions.  After the Effective Date, Debtor shall have the right to bring, settle, release, compromise,

or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in his discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. This Plan is filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights. Notwithstanding Debtor's retention of Retained Actions, Debtor shall cooperate with any creditor who seeks to assist Debtor in the investigation and/or potential pursuit of any Retained Action.

7.2.5 *Effectuating Documents, Further Transactions*. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

7.2.6 *Exemption from Certain Transfer Taxes and Recording Fees*. Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

19

7.2.7  *Further Authorization*.  Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.2.8  *Liabilities of Debtor*.  Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

**Article 8**
**Distributions**

8.1  *Disbursing Agent.*  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor, the Subchapter V Trustee (as applicable), or its agent.

8.2  *Distributions of Cash*.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

8.3  *No Interest on Claims or Interests*.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

8.4  *Delivery of Distributions*.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor or the Subchapter V Trustee (as applicable) (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor or Subchapter V Trustee (as applicable) is notified by such Holder in writing of such Holder's then-current address, at which time Debtor or Subchapter V Trustee (as applicable) shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtor or Subchapter V Trustee (as applicable) and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor or the Subchapter V Trustee (as applicable) to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtor or

20

the Subchapter V Trustee (as applicable) shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtor or the Subchapter V Trustee (as applicable) shall be relieved of any obligation to make said payment or Distribution and Debtor or the Subchapter V Trustee (as applicable) is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor or the Subchapter V Trustee (as applicable) to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor or the Subchapter V Trustee (as applicable) to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtor shall Debtor's or the Subchapter V Trustee's (as applicable) obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtor or the Subchapter V Trustee (as applicable) shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor or the Subchapter V Trustee (as applicable) shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

   8.5   *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

   8.6   *Fractional Dollars*. Any other provision of this Plan notwithstanding, the Debtor or the Subchapter V Trustee (as applicable) shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would

otherwise be called for, at Debtor's or the Subchapter V Trustee's (as applicable) option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.7    *Withholding Taxes*.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 9
## Procedures for Treating and Resolving Disputed Claims

9.1    *Objections to Claims*.  Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

9.2    *No Distributions Pending Allowance*.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

9.3    *Resolution of Claims Objections*.  On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 10
## Provision for Assumption of Unexpired
## Leases and Executory Contracts

*10.1    Provisions Regarding Executory Contracts.*

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

## Article 11
## Effect of Plan on Claims and Interests

*11.1    Vesting of Debtor's Assets*.    Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically

provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order and, in the case of a Plan confirmed under § 1191(b), the supervision of the Subchapter V Trustee.

     11.2    *Discharge of Debtor.*

             *11.2.1*  <u>Discharge if Plan Confirmed Under Section 1191(a)</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

             *11.2.2*  <u>Discharge if Plan Confirmed Under Section 1191(b)</u>. If the Plan is confirmed under section 1191(b), as soon as practicable after completion by the Debtor of the payment of all projected disposable income and any other payments expressly provided for under this Plan due within the first three (3) years of the plan, or such longer period not to exceed five (5) years as the Court may fix within the Confirmation Order, the Court shall grant Debtor a discharge of all debts.

     11.3    *Setoffs*. Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

     11.4    *Exculpation and Limitation of Liability*.  Under the Plan, Debtor's current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or

23

Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan. Fees and expenses which Debtor owes to its Professionals and to the Subchapter V Trustee are excluded from this Exculpation.

*11.5    Injunction*.       Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

*11.6    Effect of Confirmation*.

*11.6.1*  <u>Binding Effect</u>.  On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

*11.6.2*  <u>Effect of Confirmation on Automatic Stay</u>.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

*11.6.3*  <u>Filing of Reports</u>.  Debtor shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, the Subchapter V Trustee, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

*11.6.4*  <u>Post-Effective Date Retention of Professionals</u>.  Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtor will employ and pay professionals in their ordinary course of business.

**Article 12**
**Conditions Precedent**

12.1    *Conditions to the Effective Date.*  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.2 of this Plan.

*12.1.1*  The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

24

*12.1.2* All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtor in its reasonable discretion.

*12.1.3* Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

12.2  *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor).  The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 13**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

*13.1*  *Retention of Jurisdiction*.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

*13.1.1*  To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

*13.1.2*  To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

*13.1.3*  To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

*13.1.4*  To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor[1];

*13.1.5*  To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

---

[1] Notwithstanding anything to the contrary in the Plan, Debtor shall be authorized to file any Retained Action related to the collection of accounts receivable in any state or local court with jurisdiction under applicable state law.

*13.1.6*       To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

*13.1.7*       To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

*13.1.8*       To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

*13.1.9*       To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

*13.1.10*     To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

*13.1.11*     To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under this Plan;

*13.1.12*     To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

*13.1.13*     To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

*13.1.14*     To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Case; and

*13.1.15*     To enter a final decree.

*13.1.16*     To enter an order of discharge.

*13.1.17*     To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

   *13.2     Alternative Jurisdiction*.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtor shall be authorized to bring any action related to a lease, contract or account (including any account

receivable due to Debtor) to which Debtor is a party in any state or local court having jurisdiction over such action.

13.3    *Final Decree*.  If the Plan is confirmed under 1191(a), the Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtor has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.  If the Plan is confirmed under 1191(b), the Bankruptcy Court may, upon application of Debtor, at any time after Final Distribution, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.

## Article 14
## Miscellaneous Provisions

14.1    *Modification of the Plan*.  Debtor shall be allowed to modify this Plan pursuant to section 1193 of the Bankruptcy Code to the extent applicable law permits.

14.2    *Pre-Confirmation Modifications.* Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

14.3    *Modification After Confirmation And Prior to Substantial Consummation.* Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

14.4    *Modification After Substantial Consummation.* If the Plan has been confirmed under section 1191(b), Debtor may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

14.5    *Allocation of Plan Distributions Between Principal and Interest*.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

27

14.6    *Applicable Law*.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

14.7    *Preparation of Estate Returns and Resolution of Tax Claims*.  Debtor shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.8    *Headings*.  The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

14.9    *Revocation of Plan*.  Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

14.10    *No Admissions; Objection to Claims*.  Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtor to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

14.11    *No Bar to Suits*.  Except as otherwise provided in Article 11 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtor from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by Debtor in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtor retains and reserves the right to prosecute Retained Actions.

14.12    *Exhibits/Schedules*.  All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

## Article 15
## Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the

28

possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only.  No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted.  Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtor assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest.  Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 12th day of May, 2022.

**GEER LAW GROUP, LLC**

*/s/ Will B. Geer*
Will Geer
Georgia Bar No. 940493
50 Hurt Plaza, SE, Suite 1150
Atlanta, Georgia 30303
(404) 233-9800
Attorney for Debtor in Possession

**Exhibit A**

**Debtor's Budget**

| Income | $12,562.00 – Debtor ($8,812.00 from W2 wages and $3,750.00 from business distributions) $3,750.00 – Spouse (Distributions from business) |
|---|---|
| Expenses | |
| Mortgage/Rent | $5,800.00 |
| Renter's Insurance | $35.00 |
| Priority Tax Claim | $230.00 |
| Auto Insurance | $381.00 |
| House Maintenance | $200.00 |
| Food and housekeeping supplies | $2,100.00 |
| Personal Care Products | $200.00 |
| Power/Natural Gas | $325.00 |
| Cable/Internet/Cell phones | $640.00 |
| Water | $125.00 |
| Children's Activities | $700.00 |
| Clothing/Laundry/Dry Cleaning | $350.00 |
| Quarterly Tax Payments | $2,250.00 |
| Medical/Dental Expenses | $775.00 |
| Transportation (Gas/Car Maintenance, Etc.) | $500.00 |
| Life Ins. | $167.00 |
| Spouse Car Payment | $633.00 |
| Pet Expenses | $100.00 |
| Class 4 – Fifth Third Audi | $745.25 |
| Total Expenses | $16,256.25 |
| **Disposable Income** | **$55.75** |
| **Family Contributions** | **Amount necessary to pay Class 6 claimants** |

## CERTIFICATE OF SERVICE

I certify that on this date I filed the foregoing via the Court's CM/ECF system, which will provide electronic notice of Debtor's Plan to the following parties:

- **Ron C. Bingham**    ron.bingham@arlaw.com, lianna.sarasola@arlaw.com
- **Wade Kyle Cannon**    wcannon@gearhiserpeters.com, myoung@gearhiserpeters.com
- **Lisa F. Caplan**    lcaplan@rubinlublin.com, nbrown@rlselaw.com;akhosla@rlselaw.com;ruluecf@gmail.com;BKRL@ecf.courtdrive.com;abricker@rlselaw.com
- **Bret J. Chaness**    bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **Will B. Geer**    wgeer@wiggamgeer.com, willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;4233204420@filings.docketbird.com
- **Alan Hinderleider**    Alan.Hinderleider@usdoj.gov
- **Brian J. Levy**    blevy@burr.com, mhjones@burr.com
- **Cameron M. McCord (Sub V Trustee)**    cmccord@joneswalden.com, jwdistribution@joneswalden.com

This 12th day of May, 2022.

**GEER LAW GROUP, LLC**

*/s/ Will B. Geer*
Will B. Geer
Georgia Bar No. 940493
50 Hurt Plaza, SE, Suite 1150
Atlanta, Georgia 30303
(404) 233-9800
Attorney for Debtor in Possession